**ALICIA LEDUC MONTGOMERY, OSB 173963**
Email: alicia@leducmontgomery.com
**LEDUC MONTGOMERY LLC**
2210 W Main Street, Suite 107 #328
Battle Ground, Washington 98604
Telephone: (503) 500-5695

Attorney for Plaintiff John Lee Malaer

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| JOHN LEE MALAER<br><br>Plaintiff,<br><br>vs.<br><br>SDA INVESTMENTS, INC. dba LUMPY'S, an Oregon corporation,<br><br>Defendants. | Case No. 1:22-cv-00947-CL<br><br>**DECLARATION OF ALICIA LEDUC MONTGOMERY IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

I, Alicia J. LeDuc Montgomery, declare:

1. I am over the age of 18 years and I make this declaration based on my personal knowledge of the facts contained herein.

2. I am the attorney for Plaintiff in this case.

3. On July 26, 2022, I mailed a copy of the complaint, summons, notice and request for waiver of process, pre-paid mailing envelope, and demand letter to Lumpy's. The demand letter outlined Lumpy's liability on the false imprisonment claim as well as potential additional claims including Americans with Disabilities Act, intentional infliction of emotional distress, and defamation which

Plaintiff would seek to add in an upcoming amended complaint in the litigation.  I later confirmed that Lumpy's counsel had received a copy of the letter before filing a response or motion in this case.

4. Attached as Exhibit 1 is a true and correct copy of the demand letter I sent Lumpy's providing notice of the additional claims Plaintiff intended to bring against Lumpy's in an Amended Complaint in this case.

5. On October 27, 2022, before ever filing a notice of appearance or responsive pleading or motion in this case, Lumpy's served Requests for Production of documents on Plaintiff.

6. In turn, Plaintiff served Requests for Production, Requests for Admission, and Interrogatories on Lumpy's on October 31, 2022.  Plaintiff served Lumpy's its responses to Lumpy's RFPs on November 28, 2022 and offered to make a production of records within the next week.  Lumpy's counsel responded providing Lumpy's preferred method of accepting documents for production from Plaintiff.  Yet Lumpy's has never responded to any of Plaintiff's discovery requests, and declined to respond to Plaintiff's follow-up inquiries on when written discovery responses would be received.

***Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.***

DATED: December 22, 2022

                                                      _/s/ Alicia LeDuc Montgomery_____
                                                      Alicia J. LeDuc Montgomery

                                                      Attorney for Plaintiff John Lee Malaer

**LeDuc Montgomery LLC**
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

Alicia J. LeDuc Montgomery
alicia@leducmontgomery.com
+1 (503) 500-5695

July 26, 2022

Steven Apted
SDA Investments, Inc. dba Lumpy's
801 S Riverside
Medford, OR 97501

**Re: Lawsuit Filed Against Lumpy's in *Malaer v. Jackson County et al*, 1:22-cv-00947-HZ**

Dear Mr. Apted,

This law firm represents Plaintiff John Malaer in the above referenced litigation. A lawsuit was filed in federal court on June 30, 2022 naming SDA Investments dba Lumpy's ("Lumpy's") as a defendant, along with the Jackson County Sheriff's Department and Sheriff Deputy Brian Kolkemo. A copy of that lawsuit is attached as Exhibit 1.

Following up on my phone call with you on July 19, 2022, below is a summary of the factual and legal issues between Plaintiff and Lumpy's, along with service and waiver of process information regarding the lawsuit. If Lumpy's is represented by an attorney, please forward a copy of this letter and my contact information to them.

**Background of Legal Issues**
As noted in the complaint, Plaintiff is a permanently disabled paraplegic confined to use of an electric wheelchair for mobility. The complaint details more of the encounter between Plaintiff and Lumpy's prior employee Kelly Cole, not all of those facts are reiterated here.

The crux of Lumpy's involvement in the lawsuit concerns Cole's conduct and treatment of Plaintiff during a July 2019 incident in which Plaintiff's electric wheelchair batteries died while trying to traverse the Lumpy's parking lot to get to the public bus stop in front of the Lumpy's store. Cole prevented Plaintiff from boarding a public bus in front of Lumpy's when Plaintiff's wheelchair batteries had died, and subsequently caused his arrest by calling and making false statements to the Medford Police that Plaintiff was faking his wheelchair being stuck in a pothole in front of Lumpy's - a statement later determined to be untrue by Medford Police.

Cole knew that Plaintiff's wheelchair had become stuck twice in potholes while trying to reach the bus stop. Plaintiff called for help and threw pebbles at the store to get her attention, but she refused to help, admitting police she told Plaintiff "I'm not doing nothing for you." Other passersby helped Plaintiff out of the holes, but his chair continued to get stuck on the rough terrain without sufficient battery power to drive out of the holes.

1

LeDuc Montgomery LLC
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

Cole got angry Plaintiff was near the parking lot and repeatedly calling for help. She came outside and aggressively confronted Plaintiff, falsely accusing him of faking being stuck and turning off his wheelchair motor, and said she would not help him call a cab or get to the bus stop. A verbal argument ensued in which Cole called Plaintiff a sad, pathetic man because he was disabled, stuck, and frustrated and made other derogatory and offensive comments to Plaintiff. Plaintiff responded telling Cole she was a miserable person and someone should put her out of her misery. Instead of letting Plaintiff leave by bus or calling Plaintiff a cab so he could leave, and thereby deescalate and end the situation, Cole called the Medford Police and asked them to arrest Plaintiff. She made false statements to the police about Plaintiff's conduct, intentionally mischaracterizing his insult as "threatening her life" despite later admitting to officers on camera that "he didn't scare me, he just pissed me off. And he thought he was going to get away with it." Cole even went so far as to tell an officer "I'll beat him up," in response to the officer saying he did not want to use force against Plaintiff in a wheelchair. Cole later strongly suggested she may have been illegally concealing a firearm under her shirt while working inside Lumpy's and asked officers for guidance about concealed carry of guns.

Despite ostensibly wanting Plaintiff to leave, and despite Plaintiff having caused no damage to the Lumpy's building or customers (per Cole's recorded statement to police) and not having even entered Lumpy's, Cole intervened in Plaintiff's attempt to exit the area by bus and prevented him from leaving. She cut off Plaintiff and told the bus driver she had called the cops and he should not allow Plaintiff to board. Cole admitted to police on camera that "He was trying to catch the bus before [the police] showed up" so "I told the bus driver, 'You don't take him, the cops are coming.'" The bus then left without taking Plaintiff aboard, and Plaintiff missed his ride home.

Video and audio recordings from the Medford Police body cameras show that after the bus left, Cole made multiple false statements to police regarding the nature of her interaction with Plaintiff with the intent to of getting Plaintiff arrested. She repeatedly told officers that Plaintiff was faking his wheelchair mobility issues, saying he ""made [people] think it was a dead battery," that "he got himself stuck in that hole purposely," that "he made them believe the motor was dead" then "turned the motor back on," stated that "yeah" Plaintiff was pretending the wheelchair was out of battery, and proudly asserted "The motor's good. If you guys have to load him up, the motor's good." But audio and video footage shows that when the officers went to move the wheelchair after Plaintiff's arrest based upon Cole's statements, the officers confirmed the wheelchair batteries were in fact dead, the officers could not move the wheelchair without dragging and damaging it, and Cole's statements were actually false and misleading.

Cole also made contradictory statements to police during her multiple recorded conversations with multiple officers at the scene. Initially, Cole told police Plaintiff was yelling at everyone who went by. But then after Plaintiff was arrested based on her statement, she backtracked and admitted he "wasn't yelling at people as well …. mostly me." Cole tried to suggest Plaintiff was a drug addict, but when questioned she admitted she didn't know who he was and had "never seen him before." She also tried to inflate that fact Plaintiff had thrown pebbles at the building, but then admitted it was to get her attention for help and that "no" it didn't cause any damage.

LeDuc Montgomery LLC
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

Ms. Cole had no lawful grounds to prevent Plaintiff from accessing public transportation services as a disabled member of the public with a valid bus pass.  Ms. Cole's egregious and unwarranted conduct not only interfered with the ability of Plaintiff to access public transportation services as a disabled person, but also caused Plaintiff to be stopped and arrested for disorderly conduct based on Cole's call and false statements to police.

In turn, Cole's conduct ultimately led to Plaintiff being maliciously abused and forced to withstand degrading and inhumane treatment while inside the Jackson County Jail immediately following his arrest.  Jackson County jail video shows Plaintiff being hit in the face while already handcuffed and restrained in a wheelchair, and Plaintiff being dragged naked from a wheelchair and placed on a concrete floor without his medical catheter, a wheelchair, or access to water in a jail cell for 5 hours.  During this time he was forced to urinate on himself due to medical incontinence from his paraplegia condition and lie in a pool of his own urine because he was not given his medical catheter or wheelchair. The only water he had access to during this time was toilet water. All of this atrocious conduct was recorded on video and has been filed with the court in prior litigation, there is no material dispute as to its accuracy or authenticity. Further, Jackson County Sheriff Deputies admitted Plaintiff was hit in the face a second time while in the jail, which was not caught on camera.  Plaintiff was subsequently hospitalized for a life-threatening infection following his confinement in the Jackson County Jail due to the lack of access to his catheter or antibiotic medications for an existing bladder infection, which were in a bag attached to Plaintiff's wheelchair.

The Oregon State Police launched an investigation into the Jackson County Sheriff's Department and deputies involved in Plaintiff's treatment, and recommended in a formal investigation report that the Sheriff Deputy involved be criminally prosecuted on multiple counts based on their mistreatment of Plaintiff.

As to Plaintiff, the Medford Police issued two criminal citations for Disorderly Conduct and Menacing premised on Cole's false testimony and call to the police. The Prosecutor, upon reviewing the evidence and recorded testimony of Cole against the police officer's later recorded finding that the wheelchair batteries were in fact dead at the time of the incident, declined to prosecute the matter, dropped all charges against Plaintiff, and the cases initiated by Cole's conduct were dismissed. Plaintiff was not guilty of any wrongdoing, yet due to the callous and intravenous conduct of Cole, Plaintiff was forced to suffer severe physical, psychological, and constitutional harm and hospitalization as a result of the consequences of her affirmative actions.

All of this pain and suffering Plaintiff experienced was the direct result of Kelly Cole contacting and misleading the police and actively intervening to prevent plaintiff from boarding a public bus home.  But for Cole's intervention, Plaintiff would have boarded the bus or found another way home and the entire chain of events – including physical abuse and hospitalization – would have been avoided.

LeDuc Montgomery LLC
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

Plaintiff filed this lawsuit *Malaer v. Jackson County et al*, 1:22-cv-00947-HZ to redress the harms and damage caused by the conduct of Kelly Cole in her role as a Lumpy's employee while on the Lumpy's premises.

**Lumpy's Vicarious Liability for Its Employee Kelly Cole's Actions**
As an employer, Lumpy's is vicariously liable for the actions of Ms. Cole undertaken while in the course and scope of her employment.  The Oregon Supreme Court ruled that "[u]nder the doctrine of *respondeat superior,* an employer is liable for an employee's tort when the employee acts within the course and scope of employment. This court has stated that three requirements must be met to conclude that an employee was acting within the course and scope of employment: (1) the act must have 'occurred substantially within the time and space limits authorized by the employment; (2) * * * the employee was motivated, at least partially, by a purpose to serve the employer; and (3) * * * the act is of a kind which the employee was hired to perform.'" *Minnis v. Oregon Mut. Ins. Co.*, 334 Or. 191, 201, 48 P.3d 137, 142 (2002).

Here, Cole yelled at and interacted with Plaintiff, called the police on Plaintiff, intervened in Plaintiff's attempt to access public transportation services as a permanently disabled citizen with a valid bus pass, and gave interviews to police all while Cole was on duty as a Lumpy's employee and while located on the Lumpy's premises.  She placed the phone call to the police about Plaintiff from within Lumpy's.  She gave multiple interviews to police about her call and interactions with Plaintiff from inside the Lumpy's store and in the Lumpy's doorway. She also told police, as recorded on body cameras, that she took action in part because of the impact she thought it might have on customers to have Plaintiff in the parking lot calling for help.  Thus despite Cole having passed away, there is no question that Lumpy's is legally liable to Plaintiff for Cole's tortious actions regarding this incident.

**False Imprisonment**
The Complaint asserts a claim of False Imprisonment against Lumpy's based on Cole's conduct. "False imprisonment is the imposition of unlawful restraint upon another's freedom of movement. The restraint need not be for more than a brief time." *Lukas v. J. C. Penney Co.*, 233 Or. 345, 353, 378 P.2d 717, 720 (1963) (citing Restatement of the Law, Torts, § 35).
The tort of false imprisonment has four elements: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Fossen v. Clackamas Cnty.*, 271 Or. App. 842, 847, 352 P.3d 1288, 1291 (2015).  "The use of force is not necessary to constitute false imprisonment. Any genuine restraint constitutes an actionable imprisonment although effected without actual contact with the person. The essential thing is the restraint of the person. This may be caused by … conduct or by words." *Lukas v. J. C. Penney Co.*, 233 Or. 345, 353, 378 P.2d 717, 721 (1963).  For example, "confinement may be satisfied by establishing that the defendant did at least one of four things: (1) *put up actual or apparent physical barriers to prevent plaintiff's exit*, (2) used physical force to prevent exit, (3) used threats of force to prevent exit, or (4) *asserted legal authority to prevent exit*. *Campbell v. Safeway, Inc.*, 332 F. Supp. 2d 1367, 1373 (D. Or. 2004) (emphasis added).

LeDuc Montgomery LLC
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

Civil actors such as Ms. Cole can be liable for false imprisonment where they cause a person's freedom of movement to be temporarily restrained without lawful cause or privilege, or where they intentionally participate in having a person arrested by police without lawful cause or privilege. *See Lukas v. J. C. Penney Co.*, 233 Or. 345, 353, 378 P.2d 717, 720 (1963) (affirming jury award to Plaintiff of $4,000 for False Imprisonment claim, plus punitive damages, where a store clerk merely stopped the Plaintiff on a public sidewalk for two minutes and would not let her leave unless she gave up her shopping bag, but no crime had been committed and Plaintiff was not subsequently arrested by police); *Buckel v. Nunn*, 133 Or. App. 399, 891 P.2d 16 (1995) (affirming a jury verdict awarding Plaintiff $30,000 in compensatory damages against store owner and manager and security personnel plus $25,000 in punitive damages against each defendant on False Imprisonment and Intentional Infliction of Emotional Distress claims where defendants stopped Plaintiff in the store parking lot then interrogated Plaintiff, told Plaintiff they "would decide whether she would go home or go to jail that evening," and Plaintiff was not free to leave the interrogation, but was not guilty of any crime); *Campbell v. Safeway, Inc.*, 332 F. Supp. 2d 1367, 1374 (D. Or. 2004) (denying defendant's motion for summary judgment on False Imprisonment and Intentional Infliction of Emotional Distress claims where, in response to Plaintiff's "cocky attitude" during a theft interrogation, defendants threatened to take plaintiff out back and "kick [her] ass," placed a chair in front of the door to prevent Plaintiff's exit from the area, and "threatened force and jail time with 'the purpose of effectuating [a] present confinement.'").

Here, Cole actively initiating Plaintiff's arrest by calling the Medford Police and requesting his arrest, despite no crime being committed. Indeed, Plaintiff hadn't even been inside Lumpy's store. Rather, as Cole testified on video in a police interview, she was simply angry at Plaintiff due to their verbal altercation and didn't want him "to get away with it." While the police were on their way, Cole further restrained Plaintiff's freedom by telling the bus driver not to let Plaintiff on board because the police were coming to arrest him, causing the bus driver to prevent Plaintiff from boarding the bus and creating a restraint of Plaintiff's freedom by disallowing him the ability to travel by public transport when she knew his wheelchair battery was dead, thereby creating a barrier to Plaintiff's path to exit. This indeed contrasts with those Oregon cases that hold a store employee does not commit false imprisonment where they tell the Plaintiff they are "free to leave at any time" – rather, Cole told Plaintiff she had engaged law enforcement and told others that Plaintiff was not free to leave because she had called the police to arrest him.

Cole knew at the time she called the police, and at the time she told the bus driver not to let Plaintiff leave the area, that Plaintiff's wheelchair had been stuck in potholes from a dead battery and that Plaintiff was requesting help because he could not readily move. When police arrived, Cole further gave false testimony by stating Plaintiff's wheelchair batteries were not actually dead and that he had "threatened her life," when sworn deposition testimony showed Plaintiff had merely responded to Cole's aggressive demeanor and angry comments to him by saying "someone should put [her] out of her misery" after she mocked him for being disabled and said she wouldn't help him despite him being stranded in a broken wheelchair. Plaintiff had not stolen anything, had not requested to speak to Cole, and sought merely to leave the area; Cole had no grounds to detain him, let alone prevent him from accessing public services, and certainly not to have him arrested by police on false pretenses.

LeDuc Montgomery LLC
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

Oregon case law makes clear that should this case proceed to briefing or trial, the claim will survive any dispositive motion challenge and will be put to a jury, where Lumpy's, as Cole's employer, will be monetarily liable to Plaintiff for both False Imprisonment damages as well as punitive damages due to Cole's unlawful and malicious conduct toward a stranded, disabled civilian on a public right of way attempting to access public transit services.

**Intentional Infliction of Emotional Distress**
As shown in the cases cited above, the same facts supporting the False Imprisonment claim in the Complaint also prove a claim by Plaintiff for Intentional Infliction of Emotional Distress ("IIED") against Lumpy's based on Cole's conduct.  The IIED tort has three elements: "(1) the defendant intended to inflict severe mental or emotional distress; (2) the defendant's acts, in fact, caused plaintiff to suffer severe mental or emotional distress; and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Campbell v. Safeway, Inc.*, 332 F. Supp. 2d 1367, 1376 (D. Or. 2004).  The court determines on a case by case basis "whether defendant's conduct can be characterized as extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior." *Campbell v. Safeway, Inc.,* 332 F. Supp. 2d 1367, 1376–77 (D. Or. 2004) (internal citations omitted).

Cole's screaming at and denying aid to a permanently disabled wheelchair-bound person in a parking lot who is asking for help, then calling the police to have the person arrested for their mere presence near a store, followed by preventing them from accessing public transit to take them home certainly exceeds the bounds of "socially tolerable behavior." *See, e.g., Smithson v. Nordstrom, Inc.*, 63 Or. App. 423, 426, 664 P.2d 1119, 1121 (1983) (jury could find socially intolerable conduct where security officers indicated to plaintiff the store had sufficient evidence of her wrongdoing despite evidence suggesting officers "did not reasonably believe they had sufficient evidence to charge her with a crime," and told plaintiff they "would call the police and have her taken to jail if she did not sign a confession"); *see also Hall v. May Dep't Stores Co.*, 292 Or. 131, 136, 637 P.2d 126, 130 (1981) (noting there is "a well recognized line of [IIED] cases involving personally abusive business tactics ... against inexperienced and vulnerable individuals"). Cole acted "volitionally with knowledge that the acts would cause severe emotional distress" to Plaintiff, particularly as Cole was already aware Plaintiff was in distress before ever engaging him directly or contacting the police.  *McGanty v. Staudenraus*, 321 Or. 532, 551, 901 P.2d 841, 853 (1995).

Thus for the same reasons Lumpy's is liable to Plaintiff for False Imprisonment, Lumpy's would also be liable to Plaintiff for IIED compensatory and punitive damages resulting from Cole's actions, including the harm experienced by Plaintiff in being denied public services, arrested, his wheelchair damaged during the course of the arrest, and the physical assault and emotional distress he suffered while held overnight in the Jackson County Jail as a result of the arrest instigated and supported by Cole.

**Defamation**
Lumpy's is also liable to Plaintiff for Cole's conduct in making defamatory statements to police about Plaintiff while on duty as a store employee.  Under Oregon law, to establish a claim for

LeDuc Montgomery LLC
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

defamation a Plaintiff need only show that the defendant made a defamatory statement about him, published the statement to a third party, and the statement caused loss or harm to plaintiff. A statement that "would subject the plaintiff to hatred, contempt or ridicule," that tends to "diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held," or that brings about "adverse, derogatory or unpleasant feelings or opinions against" the plaintiff can be the basis for a defamation claim. *Lowell v. Wright*, 369 Or. 806, 814 (2022). Cole's false statements to police detailed above, particularly about Plaintiff faking being in need of help and that the wheelchair batteries were not dead, are not defensible as they were shown by police on camera to be demonstrably false, and Cole knew at the time of making the statements that Plaintiff had been asking for help because his wheelchair was stuck. Taken in tandem with her derogatory comments to the police about Plaintiff being sad and pathetic as a disabled man, and wanting to beat him up, Cole acted with malice when she made such false statements about Plaintiff. As a direct result of Cole's statements to police, Plaintiff was harmed by the loss of "esteem, respect, goodwill or confidence" in which he was held during the encounter with police, and suffered adverse effects by being arrested, subjected to physical harm in the jail, hospitalized, and criminally prosecuted.

**Americans with Disabilities Act**
Finally, Cole's behavior evidences extreme prejudice toward a permanently disabled person in attempting to access public services in a public right-of-way near a bus stop. As a public accommodation, Lumpy's is subject to the mandates of the Americans with Disabilities Act, and Oregon's state law counterpart, including not engaging in the prevention or denial of access to services by disabled Americans. Cole knew Plaintiff was throwing pebbles and calling to Lumpy's store to obtain services and use the phone to call a cab. She also knew he was located the vicinity of the Lumpy's parking lot and having trouble navigating the terrain on his wheelchair due to unmaintained potholes. Cole further knew Plaintiff wanted to access the public bus for a ride home. Cole overtly discriminated against Plaintiff by calling him derogatory names based on his disability, denying him access to help or the Lumpy's phone to call for help, and she intentionally acted so as to prevent Plaintiff's access to a public bus at a public bus stop, without just cause (Cole admitted on video that Plaintiff had not caused any damage, and Plaintiff was not guilty of any crime).

**Statute of Limitations**
The statute of limitations for False Imprisonment is two years. However, Governor Brown's executive orders addressing the COVID-19 pandemic tolled the statute of limitations to 90 days following the end of the state of emergency, which was April 1, 2022, extending the statute of limitations for the claims at issue in this case. Plaintiff's Complaint was therefore timely filed.

**Service and Waiver of Legal Process**
Plaintiff already filed the lawsuit in federal court naming Lumpy's as a party, and the court clerk issued a formal Summons, attached as Exhibit 2. A separate lawsuit regarding this incident is also already in litigation. Therefore, enclosed as Exhibit 3 are the formal Waiver of Process documents. Per the notice, Lumpy's has 30 days to respond. If Lumpy's waives service, it will have 60 days to respond to the Complaint.

**LeDuc Montgomery LLC**
2210 W Main Street, Suite 107 #328, Battle Ground, Washington 98604
www.leducmontgomery.com

In the coming month Plaintiff intends to amend the Complaint to add the ADA, defamation, and IIED claims listed above and aggressively seek full recovery of damages, attorneys' fees, and costs. Plaintiff will take action to compel Lumpy's appearance in this case if it declines to waive service of process. Should Lumpy's wish to discuss this matter prior to waiving service and responding to the Complaint with full litigation commencing, I can be reached at the contact information listed above.

If Lumpy's is represented by an attorney, please forward a copy of this letter, its attachments, and my contact information to them.

Sincerely,

*[signature]*

Alicia J. LeDuc Montgomery